UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61780-CIV-ZLOCH/ROSENBAUM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

VARIOUS REAL PROPERTIES PURCHASED BY
OR WITH OR ON BEHALF OF SCOTT W. ROTHSTEIN,
SPECIFICALLY:

(1) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2307 CASTILLA ISLE, FORT
LAUDERDALE, FLORIDA;

(2) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2308 CASTILLA ISLE, FORT
LAUDERDALE, FLORIDA;

(3) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2316 CASTILLA ISLE,
FORT LAUDERDALE, FLORIDA;

(4) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 30 ISLA BAHIA DRIVE,
FORT LAUDERDALE, FLORIDA;

(5) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 29 ISLA BAHIA DRIVE,
FORT LAUDERDALE, FLORIDA;

(6) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 350 SE 2ND STREET, UNIT 2840,
FORT LAUDERDALE, FLORIDA;

(7) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 380 CARRINGTON DRIVE,
WESTON, FLORIDA;

(8) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2133 IMPERIAL POINT DRIVE,
FORT LAUDERDALE, FLORIDA;

AND INCLUDING THE FOLLOWING
REAL PROPERTIES ("RP"), VEHICLES &
VESSELS ("VV"), TANGIBLES ("T"),
BANK ACCOUNTS ("BA"), BUSINESS
INTERESTS ("BI") AND CONTRIBUTIONS ("C"),
SPECIFICALLY:

(RP9) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2627 CASTILLA ISLE,
FORT LAUDERDALE, FLORIDA;

(RP10) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 10630 NW 14TH STREET, APT. 110,
PLANTATION, FLORIDA;

(RP11) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 227 GARDEN COURT,
LAUDERDALE BY THE SEA, FLORIDA;

(RP12) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 708 SPANGLER BOULEVARD,
BAY 1, HOLLYWOOD, FLORIDA;

(RP13) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 1012 EAST BROWARD BOULEVARD,
FORT LAUDERDALE, FLORIDA;

(RP14) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 950 N FEDERAL HIGHWAY,
FORT LAUDERDALE, FLORIDA;

(RP15) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 350 LAS OLAS BOULEVARD,
COMMERCIAL UNIT 2,
FORT LAUDERDALE, FLORIDA;

(VV1) 1990 RED FERRARI F40 COUPE,
VIN: ZFFMN34A5L0087066;

(VV2) 2009 WHITE BENTLEY CONVERTIBLE,
VIN: SCBDR33W29C059672;

(VV3) 2008 YELLOW MCLAREN MERCEDES BENZ SLR,
VIN: WDDAK76F98M001788;

-2-

(VV4) 2007 BLACK LIMOUSINE FORD EXPEDITION,
VIN: 1F1FK15557LA59223;

(VV5) 2009 RED FERRARI 430 SPIDER,
VIN: ZFFEW59A380163011;

(VV6) 2007 SILVER ROLLS ROYCE CONVERTIBLE,
VIN: SCA1L68557UX23044;

(VV7) 2006 SILVER HUMMER H1,
VIN: 137PH84396E220665;

(VV8) 2008 CADILLAC ESCALADE,
VIN: 1GYEC63858R234458;

(VV9) 1967 RED CONVERTIBLE CORVETTE,
VIN: 194677S104745;

(VV10) 2009 BLACK BUGATTI VEYRON EB 16.4,
VIN: VF9SA25C28M795153;

(VV11) 2008 BLUE ROLLS ROYCE DROPHEAD CONVERTIBLE,
VIN: SCA2D68528UX16071;

(VV12) 2006 RED FERRARI F430 SPIDER,
VIN: ZFFEW59A560148863;

(VV13) 2008 CHEVROLET CORVETTE,
VIN: 1G1YY26W485120085;

(VV14) 2009 CHEVROLET CORVETTE Z06,
VIN: 1G1YZ26E995111923;

(VV15) 2009 BLUE GRAY MASERATI GRANTURISMO COUPE,
VIN: ZAMGJ45A090042326;

(VV16) 2009 WHITE MERCEDES BENZ,
VIN: WDBSK71F159F49477;

(VV17) 2007 87' WARREN,
HULL # WAR87777B707;

-3-

(VV18) 33' AQUARIVA,
HULL # XFA33R74G405;

(VV19) 2009 11' YAMAHA JET SKI,
HULL # YAMA3661I809;

(VV20) 2009 11' YAMAHA VS,
HULL # YAMA3626I809;

(VV21) 2009 11' YAMAHA VS,
HULL #YAMA2679G809;

(VV22) 1999 55' SEA RAY 540 SUNDANCER,
HULL # SERY001899;

(VV23) 2009 YAMAHA JET SKI,
HULL # YAMA4288K809.

(VV 24) 2010 WHITE LAMBORGHINI LP-670SV,
VIN: ZHWBU8AHXALA03837;

(VV25) MERCEDES BENZ S65 VR BYTURBO,
VIN: WDDEJ79XX8A015189,
FLORIDA TAG  RHV490;

(VV26) 2009 RED BMW CONVERTIBLE,
VIN: WBALM53529E160836;

(VV27) 2009 MERCEDES BENZ SLK 350
CONVERTIBLE, VIN: WDBWK58F19F190779;

(T1)    304 PIECES OF JEWELRY;

(T2)    16 DU PONT LIGHTERS;

(T3)    3 PIECES SPORTS MEMORABILIA;

(T4)    $271,160 IN UNITED STATES CURRENCY;

(T5)    $1,500 IN UNITED STATES CURRENCY;

(T6)    $30,000 IN AMERICAN EXPRESS
GIFT CARDS;

-4-

(T7)   $50,000 IN AMERICAN EXPRESS
GIFT CARDS;

(T8)   5 ADDITIONAL WATCHES;

(T9)   GUITAR COLLECTION;

(BA1) FIDELITY INVESTMENTS STOCK ACCOUNT,
IN THE NAME OF SCOTT W. ROTHSTEIN,
VALUED AT APPROXIMATELY $1,263,780;

(BA2) GIBRALTAR BANK ACCOUNT 5001008510,
IN THE NAME OF WAWW 3 LLC, IN THE
APPROXIMATE AMOUNT OF $117,032.76;

(BA3) GIBRALTAR BANK ACCOUNT 5001009310,
IN THE APPROXIMATE AMOUNT OF $53,448.51;

(BA4) GIBRALTAR BANK ACCOUNT 5001005310,
IN THE APPROXIMATE AMOUNT OF $71,793.06;

(BA5) GIBRALTAR BANK ACCOUNT 5001001410,
IN THE APPROXIMATE AMOUNT OF $995,521.426;

(BA6) BANK POPULAIRE, MOROCCO, BANK
ACCOUNT 17878021 1819923220000187,
IN THE NAME OF SCOTT ROTHSTEIN, IN THE
APPROXIMATE AMOUNT OF $12,000,000;

(BA7) BANK POPULAIRE, MOROCCO, ACCOUNT
IN THE NAME OF AHNICK KHALID,
UP TO THE AMOUNT OF $2,000,000;

(BA8) BANK POPULAIRE, MOROCCO, ACCOUNT
IN THE NAME OF STEVE CAPUTI,
UP TO THE AMOUNT OF $1,000,000;

(BI1)   STOCK CERTIFICATES OR BENEFICIAL
INTEREST IN 50,000 SHARES OF CAPITAL
STOCK IN GIBRALTAR PRIVATE BANK & TRUST;

(BI2)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN QTASK;

-5-

(BI3)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
BROWARD BANK OF COMMERCE;

(BI4)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
BOVA RISTORANTE;

(BI5)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
BOVA CUCINA;

(BI6)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
BOVA PRIME;

(BI7)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
CAFÉ IGUANA, PEMBROKE PINES, FLORIDA;

(BI8)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
CART SHIELD USA, LLC;

(BI9)   SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
RENATO WATCHES;

(BI10) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
EDIFY LLC;

(BI11) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
V GEORGIO VODKA;

(BI12) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
SEA CLUB;

(BI13) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
NORTH STAR MORTGAGE;

(BI14) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
KIP HUNTER MARKETING;

(BI15) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
RRA SPORTS AND ENTERTAINMENT, LLC;

(BI16) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
VERSACE MANSION/CASA CASUARINA, INCLUDING
10 YEAR OPERATING AGREEMENT WITH 2 TEN YEAR OPTIONS;

-6-

(BI17) SCOTT W. ROTHSTEIN'S EQUITY INTEREST, AND
LICENSING RIGHTS, IN ALTERNATIVE BIOFUEL COMPANY;

(BI18) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
RRA GOAL LINE MANAGEMENT;

(BI19) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN
IRON STREET MANAGEMENT, LLC;

(BI20) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN,
AND LOAN TO, AFRICAT EQUITY IG DECIDE;

(BI21) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN,
AND RENTS DERIVED FROM BUCKY'S BBQ, LOCATED
AT 1198 N. OLD DIXIE HIGHWAY, BOCA RATON,
FLORIDA;

(BI22) SCOTT W. ROTHSTEIN'S EQUITY INTEREST IN,
AND RENTS DERIVED FROM THE CAR WASH LOCATED
AT 1299 FEDERAL HIGHWAY, BOCA RATON, FLORIDA

(BI23) PROMISSORY NOTE BY UNIGLOBE
IN FAVOR OF SCOTT W. ROTHSTEIN;

(BI24) ALL EQUITY INTEREST HELD BY OR ON BEHALF
OF SCOTT W. ROTHSTEIN, IN VARIOUS CORPORATIONS
AND ENTITIES;

(C1)    $6,000 IN CAMPAIGN CONTRIBUTIONS MADE
TO ALEX SINK ;AND VOLUNTARILY OFFERED,
AND TURNED OVER, TO THE UNITED STATES
ON BEHALF OF ALEX SINK;

(C2)    $40,000 IN CAMPAIGN CONTRIBUTIONS TO
REPUBLICAN PARTY OF FLORIDA, "FLORIDA" ACCOUNT
AND VOLUNTARILY OFFERED, AND TURNED OVER, TO
THE UNITED STATES BY THE REPUBLICAN PARTY OF FLORIDA;

(C3)    $10,000 IN CAMPAIGN CONTRIBUTIONS TO
REPUBLICAN PARTY OF FLORIDA, "FEDERAL" ACCOUNT
AND VOLUNTARILY OFFERED, AND TURNED OVER, TO
THE UNITED STATES BY THE REPUBLICAN PARTY OF FLORIDA;

(C4)    $90,000 IN CAMPAIGN CONTRIBUTIONS TO
REPUBLICAN PARTY OF FLORIDA AND VOLUNTARILY
OFFERED, AND TURNED OVER, TO THE UNITED STATES
BY THE REPUBLICAN PARTY OF FLORIDA;

(C5)    $5,000 IN CAMPAIGN CONTRIBUTIONS TO
REPUBLICAN PARTY OF FLORIDA BY ROTHSTEIN
BUSINESS ENTITY KNOWN AS WAWW AND
VOLUNTARILY OFFERED, AND TURNED OVER, TO THE
UNITED STATES BY THE REPUBLICAN PARTY OF FLORIDA;

(C6)    $800,000 CHARITABLE DONATION TO
JOE DIMAGGIO CHILDREN'S HOSPITAL, WHICH
HOSPITAL ADVISED THE UNITED STATES OF THE
DONATION FROM THE ROTHSTEIN FAMILY FOUNDATION;

(C7)    $1,000,000 CHARITABLE DONATION TO
HOLY CROSS HOSPITAL, WHICH HOSPITAL ADVISED THE
UNITED STATES OF THE DONATION FROM THE
ROTHSTEIN FAMILY FOUNDATION;

(C8)    $9,600 IN CAMPAIGN CONTRIBUTIONS TO
GOVERNOR CHARLIE CRIST AND VOLUNTARILY
OFFERED, AND TURNED OVER, TO THE UNITED STATES
BY THE OFFICE OF CHARLIE CRIST;

AND

(C9)    ALL FUNDS VOLUNTARILY TURNED OVER TO
THE UNITED STATES (IRS/FBI) SINCE IN OR ABOUT
OCTOBER 28, 2009 IN RESPONSE TO PUBLICITY
INVOLVING SCOTT W. ROTHSTEIN,

Defendants.
_____/


## AMENDED VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, hereby files this amended verified civil complaint for

forfeiture *in rem* and states as follows:

-8-

**GENERAL ALLEGATIONS**

1.      This is a civil action for forfeiture *in rem* for various real and personal properties, acquired, owned, obtained, funded or purchased, in whole or in part, by, with, at the direction of, or on behalf of, Scott W. Rothstein, individually, jointly, as alter ego of, and/or in conjunction with various entities.   The properties, real and personal,   hereinafter collectively known as "the defendants" or "the defendant properties,"   violated 18 U.S.C. §1343, and/or 18 U.S.C. §1957, and/or 18 U.S.C. §1956 thereby subjecting the defendant properties to forfeiture  pursuant to 18 U.S.C. § 981(a)(1)(C) and/or  pursuant to 18 U.S.C. § 981(a)(1)(A).

2.      The defendants consist of:

A.      **Real Properties ("RP")**, hereinafter collectively referred to as "the defendant real properties," are situated in Broward County in the Southern District of Florida, and are located at:

(RP1)   2307 Castilla Isle, Fort Lauderdale, Florida,  hereafter also referred to as "Defendant RP1," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as Lauderdale Shores Reamen Plat 15-31 B Lot 2 Blk 5 with a Folio Number of 5042 12 13 0210;

(RP2)   2308 Castilla Isle, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP2," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Lauderdale Shores Reamen Plat 15-31 B Lot 2 Blk 4 with a Folio Number of 5042 12 13 0020;

(RP3)   2316 Castilla Isle, Fort Lauderdale, Florida,  hereafter also referred to as "Defendant RP3," includes all buildings, improvements, fixtures, attachments and easements

-9-

found therein or thereon, and is more particularly described as: Lauderdale Shores Reamen Plat 15-31 B Lot 3 & Lot 4 W ½ Blk 4 with a Folio Number of 5042 12 13 0030;

(RP4)   30 Isla Bahia Drive, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP4," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Isla Bahia 47-27 B Lot 63 with a Folio Number of 5042 13 16 0640;

(RP5)   29 Isla Bahia Drive, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP5," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Isla Bahia 47-27 B Lot 35 with a Folio Number of 5042 13 16 0360;

(RP6)   350 SE 2nd Street, Unit 2840, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP6," includes that portion of the condominium,  improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: 350 Las Olas Place Condo Unit 2840 with a Folio Number of 5042 10 AN 1490;

(RP7)   380 Carrington Drive, Weston, Florida, hereafter also referred to as "Defendant RP7," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Sector 4 North 153-46 B Lot 24 Blk A with a Folio Number of 5039 01 02 0240;

(RP8)   2133 Imperial Point Drive, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP8," includes all buildings, improvements, fixtures, attachments and

easements found therein or thereon, and is more particularly described as: Imperial Point 1 Sec 53-44 B Lot 11 Blk 22 with a Folio Number of 4942 12 07 2020;

(RP9)  2627 Castilla Isle, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP9," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Lauderdale Shores Reamem Plat 15-31 B Lot 22 Blk 5 with a Folio Number of 5042 12 13 0380;

(RP10) 10630 NW 14th Street, Apt. 110, Plantation, Florida, hereafter also referred to as "Defendant RP10," includes that portion of the condominium/townhome, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: OPTIMA VILLAGE 1-"C" CONDO UNIT 201 BLDG 2 with a Folio Number of 4941 31 AC 0110;

(RP11) 227 Garden Court, Lauderdale by the Sea, Florida, hereafter also referred to as "Defendant RP11," includes that portion of the buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: SILVER SHORES UNIT A 28-39 B POR of Lot 4, BLK 5 DESC AS TO BEG AT SE COR SAID LOT 4, N 79.37 W 37.75, S 79.37, E 35.75 TO POB AKA: UNIT E MARINA VILLAGE TOWNHOMES 227GARDEN with a Folio Number of 4943 18 24 0050;

(RP12) 708 Spangler Boulevard, Bay 1, Hollywood, Florida, hereafter also referred to as "Defendant RP12," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: HARBOR VIEW 10-5 B PORTION OF LOTS 1 & 2 BLK 2 DESC AS COMM 25 S OF NE

-11-

COR OF LOT 2 ON E/L, W 20.52 ALG S/R/W/L OF ST RD 84, S 15.72 TO POB, S 7.25, E 12.59, S 24.40, W 29.92, N 7.66, W 31.74, N 24.00, E 49.07 TO POB AKA: BAY 1 PORTSIDE with a Folio Number of 5042 23 28 0010;

(RP13) 1012 East Broward Boulevard, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP13," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: BEVERLY HEIGHTS 1-30 B LOT 1 W 100, LOT 2 W 100 BLK 17 with a Folio Number of 5042 11 07 0540;

(RP14) 950 N Federal Highway, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP14," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: 31-48-43 S 150 OD FOL DESC, BEG INTER E R/W/L ST RD 5, N TO POB with a Folio Number of 4843 31 00 0401

(RP15) 350 Las Olas Boulevard, Commercial Unit 2, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP15," includes all portion of that condominium, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: 350 LAS OLAS PLACE COMM CONDO UNIT CU2 with a Folio Number of 5042 10 AP 0020.

**B.**     **Vehicles and Vessels ("VV")**, hereinafter collectively referred to as "the defendant vehicles:"

(VV1) 1990 Red Ferrari F40 Coupe, VIN: ZFFMN34A5L0087066;

(VV2) 2009 White Bentley Convertible, VIN: SCBDR33W29C059672;

(VV3) 2008 Yellow McLaren Mercedes Benz SLR, VIN: WDDAK76F98M001788;

(VV4) 2007 Black Limousine Ford Expedition, VIN: 1F1FK15557LA59223;

(VV5) 2009 Red Ferrari 430 Spider, VIN: ZFFEW59A380163011;

(VV6) 2007 Silver Rolls Royce Convertible, VIN: SCA1L68557UX23044;

(VV7) 2006 Silver Hummer H1, VIN: 137PH84396E220665;

(VV8) 2008 Cadillac Escalade, VIN: 1GYEC63858R234458;

(VV9) 1967 Red Convertible Corvette, VIN: 194677S104745;

(VV10) 2009 Black Bugatti Veyron EB 16.4, VIN: VF9SA25C28M795153;

(VV11) 2008 Blue Rolls Royce Drophead Convertible, VIN: SCA2D68528UX16071;

(VV12) 2006 Red Ferrari F430 Spider, VIN: ZFFEW59A560148863;

(VV13) 2008 Chevrolet Corvette, VIN: 1G1YY26W485120085;

(VV14) 2009 Chevrolet Corvette Z06, VIN: 1G1YZ26E995111923;

(VV15) 2009 Blue Gray Maserati Granturismo Coupe, VIN: ZAMGJ45A090042326;

(VV16) 2009 White Mercedes Benz, VIN WDBSK71F159F49477;

(VV17) 2007 87' Warren, Hull # WAR87777B707;

(VV18) 33' Aquariva, Hull # XFA33R74G405;

(VV19) 2009 11' Yamaha Jet Ski, Hull # YAMA3661I809;

(VV20) 2009 11' Yamaha VS, Hull # YAMA3626I809;

(VV21) 2009 11' Yamaha VS, Hull #YAMA2679G809;

(VV22) 1999 55' Sea Ray 540 Sundancer, SERY001899;

(VV23) 2009 Yamaha Jet Ski, Hull # YAMA4288K809;

(VV 24) 2010 White Lamborghini lp-670sv, VIN: ZHWBU8AHXALA03837;

(VV25) Mercedes Benz S65 VR Byturbo, VIN: WDDEJ79XX8A015189;

(VV26) 2009 RED BMW CONVERTIBLE, VIN: WBALM53529E160836;

(VV27) 2009 MERCEDES BENZ SLK 350 CONVERTIBLE, VIN: WDBWK58F19F190779;

**C.**     **Tangibles ("T")**, hereinafter referred to collectively as "the defendant tangibles:"

(T1)     304 pieces of jewelry, watches, necklaces and earrings seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T2)     16 DuPont Lighters seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T3)     3 pieces sports memorabilia seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T4)     $271,160 in United States currency seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T5)     $1,500 in United States currency, seized on about Wednesday, November 4, 2009, from the office of Scott W. Rothstein at the law firm of Rothstein, Rosenfeldt and Adler, P.A.;

(T6)     $30,000 in American Express Gift Cards to the attention of Scott Rothstein, obtained from UPS on or about November 12, 2009;

(T7)     $50,000 in American Express Gift Cards to the attention of Scott Rothstein, obtained from UPS on or about November 13, 2009;

(T8)     5 additional watches being turned over to the United States by Les Stracher;

(T9)     Guitar collection of Scott W. Rothstein, located at the residence of Scott and Kimberley Rothstein, valued between $10,000 and $20,000.

-14-

**D.**     **Bank Accounts ("BA")**, hereinafter collectively referred to as "the defendant bank accounts:"

(BA1)   Fidelity Investments Stock Account, in the name of Scott W. Rothstein, valued at approximately $1,263,780;

(BA2)   Gibraltar Bank account 5001008510, in the name of WAWW 3 LLC, in the approximate amount of $117,032.76;

(BA3)   Gibraltar Bank account 5001009310, in the approximate amount of $53,448.51;

(BA4)   Gibraltar Bank account 5001005310, in the approximate amount of $71,793.06;

(BA5)   Gibraltar Bank account 5001001410, in the approximate amount of $995,521.426;

(BA6)   Bank account 178780211819923220000187 at Banque Populaire, Morocco, in the name of Scott Rothstein, in the approximate amount of $12,000,000;

(BA7)   Bank account at  Banque Populaire, Morocco,  in the name of Ahnick Khalid, up to the amount of $2,000,000;

(BA8)   Bank account at Banque Populaire, Morocco,  in the name of Steve Caputi, up to the amount of $1,000,000;

**E.**     **Business Interests ("BI")**, hereinafter collectively referred to as "the defendant business interests:"

(BI1)   Stock certificates, if issued, or the beneficial interest in such shares, of 50,000 shares of capital stock, in Gibraltar Private Bank & Trust, a federally chartered stock savings association, purchased in or about September 2009 by GBPT, LLC, a Delaware Limited Liability Company, by its manager, Bahia Property Management, LLC, a Delaware Limited Liability Company, by its co-manager, Scott W. Rothstein;

(BI2)   Scott W. Rothstein's equity interest in QTask;

(BI3)   Scott W. Rothstein's equity interest in Broward Bank of Commerce;

(BI4)   Scott W. Rothstein's equity interest in Bova Ristorante;

(BI5)   Scott W. Rothstein's equity interest in Bova Cucina;

(BI6)   Scott W. Rothstein's equity interest in Bova Prime;

(BI7)   Scott W. Rothstein's equity interest in Café Iguana, Pembroke Pines, Florida;

(BI8)   Scott W. Rothstein's equity interest in Cart Shield USA, LLC;

(BI9)   Scott W. Rothstein's equity interest in Renato Watches;

(BI10)  Scott W. Rothstein's equity interest in Edify LLC;

(BI11)  Scott W. Rothstein's equity interest in V Georgio Vodka;

(BI12)  Scott W. Rothstein's equity interest in Sea Club;

(BI13)  Scott W. Rothstein's equity interest in North Star Mortgage;

(BI14)  Scott W. Rothstein's equity interest in Kip Hunter Marketing;

(BI15)  Scott W. Rothstein's equity interest in RRA Sports and Entertainment, LLC;

(BI16)  Scott W. Rothstein's equity interest in Versace Mansion/Casa Casuarina, including
        10 year Operating Agreement with 2 ten year options;

(BI17)  Scott W. Rothstein's equity interest, and licensing rights, in Alternative Biofuel
        Company;

(BI18)  Scott W. Rothstein's equity interest in RRA Goal Line Management;

(BI19)  Scott W. Rothstein's equity interest in Iron Street Management, LLC;

(BI20)  Scott W. Rothstein's equity interest in, and loan to, Africat Equity IG Decide;

(BI21)  Scott W. Rothstein's equity interest in, and rents derived from 1198 Dixie LLC;

(BI22) Scott W. Rothstein's equity interest in, and rents derived from 1299 Federal LLC;

(BI23) Promissory Note by Uniglobe in favor of Scott W. Rothstein;

(BI24) All equity interest held by or on behalf of Scott W. Rothstein, in the following

corporations and entities:

|   |   |
|---|---|
| a. | 29 Bahia LLC; |
| b. | 235 GC LLC; |
| c. | 350 LOP#2840 LLC; |
| d. | 353 BR LLC; |
| e. | 10630 #110 LLC; |
| f. | 708 Spangler LLC; |
| g. | 1012 Broward LLC; |
| h. | 1198 Dixie LLC; |
| I. | 1299 Federal LLC; |
| j. | 2133 IP LLC; |
| k. | 15158 LLC; |
| l. | AANG LLC; |
| m. | AAMG1 LLC; |
| n. | AAMM Holdings; |
| o. | ABT Investments LLC; |
| p. | Advanced Solutions; |
| q. | Bahia Property Management LLC; |
| r. | Boat Management LLC; |
| s. | BOSM Holdings LLC; |
| t. | BOVA Prime LLC; |
| u. | BOVA Restaurant Group LLC; |
| v. | The BOVA Group LLC; |
| w. | BOVA Smoke LLC; |
| x. | BOVCU LLC; |
| y. | BOVRI LLC; |
| z. | Broward Financial Holdings, Inc.; |
| aa. | CI07 LLC; |
| ab. | CI08 LLC; |
| ac. | CI16 LLC; |
| ad. | CI27 LLC; |
| ae. | CSU LLC; |
| af. | D & D Management & Investment LLC; |
| ag. | D & S Management and Investment LLC; |
| ah. | DJB Financial Holdings LLC; |
| ai. | DYMMU LLC; |

aj.   Full Circle Fort Lauderdale LLC;
ak.   Full Circle Trademark Holdings LLC;
al.   GHW1 LLC;
am.   IDNL GEAH LLC;
an.   ILK3 LLC;
ao.   IS Management LLC;
ap.   JRCL LLC;
aq.   Judah LLC;
ar.   Kendall Sports Bar;
as.   Kip Hunter Marketing LLC;
at.   NF Servicing LLC;
au.   NRI 11 LLC;
av.   NRI 15 LLC;
aw.   NS Holdings LLC;
ax.   PRCH LLC;
ay.   PK Adventures LLC;
az.   PK's Wild Ride Ltd;
ba.   Rothstein Family Foundation;
bb.   RRA Consulting Inc.;
bc.   RRA Goal Line Management LLC;
bd.   RRA Sports and Entertainment LLC;
be.   RSA 11th Street LLC;
bf.   RW Collections LLC;
bg.   S & KEA LLC;
bh.   Scorh LLC;
bi.   Tipp LLC;
bj.   VGS LLC;
bk.   The Walter Family LLC;
bl.   Walter Industries LLC;
bm.   WPBRS LLC;
bn.   WAWW;
bo.   WAWW 2 LLC;
bp.   WAWW 3 LLC;
bq.   WAWW 4 LLC;
br.   WAWW 5 LLC;
bs.   WAWW 6 LLC;
bt.   WAWW 7 LLC;
bu.   WAWW 8 LLC;
bv.   WAWW 9 LLC;
bw.   WAWW 10 LLC;
bx.   WAWW 11 LLC;
by.   WAWW 12 LLC;
bz.   WAWW 14 LLC;

ca.  WAWW 15 LLC;
cb.  WAWW 16 LLC;
cc.  WAWW 17 LLC;
cd.  WAWW 18 LLC;
ce.  WAWW 19 LLC;
cf.  WAWW 20 LLC;
cg.  WAWW 21 LLC;
ch.  WAWW 22 LLC;
ci.  JB Boca M Holdings LLC;

and

F.  **Contributions ("C"),** hereinafter collectively referred to as "the defendant contributions:"

(C1)  $6,000 in campaign contributions made to Alex Sink and voluntarily offered, and turned over, to the United States on behalf of Alex Sink;

(C2)  $40,000 in campaign contributions to Republican Party of Florida, "Florida" account and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C3)  $10,000 in campaign contributions to Republican Party of Florida, "Federal" account and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C4)  $90,000 in campaign contributions to Republican Party of Florida and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C5)  $5,000 in campaign contributions to Republican Party of Florida by Rothstein business entity known as WAWW and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C6)  $800,000 Charitable Donation to Joe DiMaggio Children's Hospital, which hospital

-19-

advised the United States of the donation from the Rothstein Family Foundation;

(C7)  $1,000,000 Charitable Donation to Holy Cross Hospital, which hospital advised the United States of the donation from the Rothstein Family Foundation;

(C8)  $9,600 in campaign contributions to Governor Charlie Crist, voluntarily offered, and turned over, to the United States by the office of Charlie Crist; and

(C9)  All funds voluntarily turned over to the United States (IRS/FBI), since in or about October 28, 2009, in response to publicity regarding Scott W. Rothstein.

3.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345 and 1355.

4.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1355 (b)(1), 1355 (b)(2) and 1395 because the defendant properties are located in the Southern District of Florida and/or because the acts or omissions giving rise to forfeiture occurred, at least in part, in the Southern District of Florida and/or the properties will be brought into the Southern District of Florida.

5.     The defendant real properties will not be seized, but will be posted with a summons/notice of the complaint in accordance with 18 U.S.C. §985(c)(1) and (3).

6.     The defendant personal properties listed at (VV1) through and including (VV23), (T1) through (T7), (BA1) through (BA2), (BI1) and (C1) through (C5) are already in possession of the United States pursuant to lawfully issued forfeiture seizure warrants or turnovers. The remaining defendant personal properties, will be further brought under the jurisdiction of the Court through the use of warrants of arrest *in rem* or protective orders, or other process, in accordance with the applicable statutes.

-20-

## FACTUAL ALLEGATIONS

7.    Based upon the following information, there is probable cause to believe that the above-described defendant properties were acquired in connection with a "Ponzi" scheme, conducted by attorney Scott Rothstein, hereinafter "Rothstein," and others.

8.    Rothstein has operated the "Ponzi" scheme since at least approximately 2005.

9.    At all times relevant to this Amended Complaint, Rothstein was the first named partner of "Rothstein, Rosenfeldt and Adler, P.A.," hereinafter referred to as "RRA, " a law firm located in Fort Lauderdale, Florida.

10.   According to witness complaints, and analysis of documents and records obtained through a federal search warrant, clients were solicited by, or on behalf of, Rothstein to invest in "settlements" in which putative plaintiffs in civil cases had entered into confidential settlement agreements with putative defendants based upon the forbearance of civil claims in sexual harassment and other labor-related cases.  The potential investors were told that these settlements, which existed in blocks ranging from hundreds of thousands to millions of dollars, could be purchased at a discount and repaid to the investors at face value over time.  Clients who agreed to invest were directed by Rothstein or others to wire transfer funds to the trust account of "RRA." For example, in September 2009, one potential investor was told that he could purchase a settlement valued at $450,000.00 for $375,000.00 which would be repaid in increments of $150,000.00 per month for the following three months.  This would amount to a yield of 20 percent over three months, or an annual percentage yield in excess of 80 percent.  The investor was further told that the funds were held in the RRA trust account. The investor was shown a purported wire transfer receipt as evidence that the funds were held in the trust account of  RRA.

-21-

11.     The investigation has disclosed that the investments purportedly underlying the above-described investment scheme never existed. The investigation has established that no such settlement agreements had ever existed and the entire investment scheme was a fraud. These transactions constituted a "Ponzi" scheme in which new investor money was utilized to pay previous investors in furtherance of the scheme. The investigation has disclosed that these types of fraudulent investments had been offered by Rothstein to a variety of persons and entities throughout the United States for at least four years, and the scheme involved hundreds of millions of dollars. Multiple bank accounts were utilized at financial institutions into which investors' money was sent by wire transfer across state lines. Further, as a fraudulent inducement to investors, Rothstein and co-conspirators falsified documents which were presented to investors as proof that certain sums of money were contained in these bank accounts when, in fact, the bank accounts did not contain these funds.

12.     The investigation has established that portions of the criminally derived proceeds were used to pay past investors thereby promoting the scheme. The investigation has established that portions of the criminally derived proceeds were used to acquire millions of dollars worth of assets including the defendant properties set forth above. The investigation has further established that many of the defendants were acquired in the name of, or were transferred to nominee corporations, controlled by Rothstein, such as those set forth at (B24), subparagraphs a. through ci. above, as a wealth preservation mechanism.

13.     The investigation has established that Rothstein's financial ability to acquire the defendants did not exist prior to the execution of the "Ponzi" scheme.

14.     Based on a review of records obtained through the federal search warrant, the investigation has established that, in one year, RRA had receivables of $8,000,000, while during that

-22-

same year, salaries for the RRA work force were $18,000,000. The additional $10,000,000 for salaries, as well as the other expenses for operation of the law firm, came from the operation of, and the funds generated, by the "Ponzi" scheme. Funds used to acquire the defendants came from the "Ponzi" scheme and not from legitimate RRA funds.

15.     Rothstein used proceeds obtained from the "Ponzi" scheme to acquire or direct the acquisition of the defendant real properties.

A.      Rothstein acquired Defendant RP1 on or about September 21, 2007 for a sales price of $1,750,000.

B.      Defendant RP1 was transferred, via Quit Claim Deed, to "C1 07 LLC" on or about August 10, 2009.

C.      Rothstein acquired Defendant RP2 on or about March 3, 2005 for a sales price of $2,730,000. In or about December 26, 2006, Rothstein obtained a $2.8 million mortgage on RP2 which was then repaid with "Ponzi" scheme funds.

D.      Defendant RP2 was transferred, via Quit Claim Deed, to "C1 08 LLC" on or about July 22, 2009.

E.      Rothstein acquired Defendant RP3 on or about March 14, 2007 for a sales price of $1,925,000.

F.      Defendant RP3 was transferred, via Quit Claim Deed, to "C1 16 LLC" on or about August 10, 2009.

G.      Rothstein and his wife Kimberly Rothstein acquired Defendant RP4 on or about March 14, 2008 for a sales price of $6,450,000.

-23-

H.    Defendant RP5, a vacant lot, was transferred to "29 Bahia LLC" on or about January 7, 2009, for a sales price of $4,000,000.

I.    Defendant RP6 was transferred, via Warranty Deed, to "350 LOP #2840 LLC" on or about May 20, 2009 for $435,700.

J.    WAWW4 LLC acquired Defendant RP7 on or about April 8, 2008 for a sales price of $475,000.

K.    Defendant RP7 was transferred to Debra E. Villegas on or about July 27, 2009 for $100 via quit claim deed.

L.    WAWW19 LLC acquired Defendant RP8 on or about November 5, 2008 for a sales price of $505,000.

M.    Defendant RP8 was transferred to "2133 IP LLC" on or about August 10, 2009 via quit claim deed for $100.

N.    Rothstein acquired Defendant RP9 on or about June 19, 2003 for a sales price of $1,800,000.  While the "Ponzi" scheme was not operating at the time of the original purchase, in or about 2005, Rothstein obtained a $2.73 million mortgage which was repaid with funds derived from the "Ponzi" scheme.

O.    Defendant RP9 was transferred via quit claim deed to CI27 LLC on or about August 10, 2009.

P.    Rothstein and Kimberly Rothstein acquired Defendant RP10 on or about August 11, 2008 for a sales price of $260,000.

Q.    WAWW LLC  acquired Defendant RP11 on or about December 12, 2007 for a sales price of $715,000.

-24-

R.      WAWW LLC quit claimed Defendant RP 11 to 235 GC LLC on or about August 10, 2009.

S.      WAWW10 LLC acquired Defendant RP12 on or about September 10, 2008 for a sales price of $765,000.

T.      WAWW LLC quit claimed Defendant RP12 to 708 Spangler LLC on or about August 10, 2009.

U.      1012 Broward LLC acquired Defendant RP13 on or about January 12, 2009 for $1.3 million.

V.      D&S Management & Investments LLC acquired Defendant RP14 on or about April 15, 2008 for $2.75 million.

W.      Bova Smoke LLC acquired Defendant RP15 on or about December 29, 2008 for $2.6 million.

X.      Bova Smoke LLC quit claimed Defendant RP15 on or about January 30, 2009 to BOSM Holdings LLC.

16.     Rothstein used proceeds obtained from the "Ponzi" scheme to acquire or direct the acquisition of the defendant vehicles.

17.     Rothstein used proceeds obtained from the "Ponzi" scheme to acquire or direct the acquisition of the defendant tangibles.

18.     Rothstein used proceeds obtained from the "Ponzi" scheme to fund the defendant bank accounts.

19.     Rothstein used proceeds obtained from the "Ponzi" scheme to acquire or direct the acquisition of his share of the defendant business interests.

-25-

20.     Rothstein used proceeds obtained from the "Ponzi" scheme to fund or make the defendant contributions.

## FIRST CLAIM FOR FORFEITURE
### 18 U.S.C. §§ 981(a)(1)(C) and 1343

21.     Plaintiff realleges paragraphs 7 through 20, above, as if fully set forth herein.

22.     Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture: "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting 'specified unlawful activity' (as defined in Section 1956(c)(7) of this title, or a conspiracy to commit such offense."

23.     "Specified unlawful activity" is defined in 18 U.S.C. §1956(c)(7), and the term includes any offense under 18 U.S.C. §1961(1). Section 1961(1) lists 18 U.S.C. 1343 (wire fraud) as an offense.

24.     Title 18, United States Code, Section 1343 provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits, or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be fined...

25.     "Ponzi" scheme investors utilized interstate wires to transfer their funds to RRA "trust" accounts.

26.     The millions of dollars generated by the "Ponzi" scheme constitute proceeds of wire fraud.

-26-

27.     Rothstein used the proceeds of wire fraud to acquire the defendant properties.

28.     Based on the foregoing, the defendant properties constitute or were derived from proceeds traceable to the specified unlawful activity of wire fraud, in violation of Title 18, United States Code, Section 1343, and are thereby forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)( C).

## SECOND CLAIM FOR FORFEITURE
## 18 U.S.C. §§ 981(a)(1)(A) and 1957

29.     Plaintiff realleges paragraphs 7 through 20, above, as if fully set forth herein.

30.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section ... 1957...of this title, or any property traceable to such property."

31.     Title 18, United States Code, Section 1957 provides in pertinent part:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).
>
> \*\*\*
>
> (d) The circumstances referred to in subsection (a) are --
>> (1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States...

32.     "Monetary transaction" is defined in 18 U.S.C. §1957(f)(1) as the:

> deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument ... by, through, or to a financial institution (as defined in section 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title...

33. "Financial transaction" is defined in 18 U.S.C. §1956(c)(4) as:

> (A) a transaction which in any way or degree affects interstate or foreign commerce (I ) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

34. "Criminally derived property" is defined in 18 U.S.C. §1957(f)(2) as "any property constituting, or derived from, proceeds obtained from a criminal offense."

35. "Specified unlawful activity" is defined in 18 U.S.C. §1956(c)(7), and the term includes any offense under 18 U.S.C. §1961(1). Section 1961(1) lists 18 U.S.C. 1343 (wire fraud) as an offense.

36. Because the funds used to acquire the defendant properties, constitute criminally derived property from wire fraud, exceed $10,000 and were involved in a monetary transaction, the defendants are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as they represent properties involved in a transaction or attempted transaction in violation of 18 U.S.C. §1957, and properties traceable to such property.

### THIRD CLAIM FOR FORFEITURE
### 18 U.S.C. §§ 981(a)(1)(A) and 1956

37. Plaintiff realleges paragraphs 7 through 20, above, as if fully set forth herein.

38. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956...of this title, or any property traceable to such property."

-28-

39.     Title 18, United States Code, Section 1956 provides in pertinent part:

(a)(1)   Whoever, knowing that the property involved in a financial transaction, represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such financial transaction which in fact involves the proceeds of specified unlawful activity —

(A)( I) with the intent to promote the carrying on of specified unlawful activity; ...

shall be sentenced.

40.     Title 18, United States Code, Section 1956 further provides in pertinent part:

...For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

41.     "Specified unlawful activity" is defined in 18 U.S.C. §1956(c)(7), and the term includes any offense under 18 U.S.C. §1961(1). Section 1961(1) lists 18 U.S.C. 1343 (wire fraud) as an offense.

42.     The financial transactions conducted by Rothstein in acquiring the defendants were done with the intent to promote the carrying on of the "Ponzi" scheme.

43.     The use of the defendant properties by Rothstein, was done with the intent to promote the carrying on of the "Ponzi" scheme.

44.     Funds derived from the "Ponzi" scheme were used to acquire the defendant properties and enable Rothstein to live a lavish lifestyle, which provided the appearance of success and helped to promote the scheme.

45.     The defendant properties were involved in a transaction or attempted transaction, or were involved in transactions or attempted transactions, in violation of 18 U.S.C. §1956 and are

-29-

therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

**WHEREFORE**, Plaintiff, United States of America requests, that any and all persons having any claim to the defendant properties be directed to file and serve their verified claims and answers as required by Rule G(5), of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, or suffer default thereof, and further requests that the Court declare the defendant properties condemned and forfeited to the United States of America, and that Plaintiff have such other and further relief as may be just and proper together with the costs and disbursements of this action.

Respectfully submitted,

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

By:    _Alison W. Lehr_

ALISON W. LEHR
ASSISTANT UNITED STATES ATTORNEY
Fla. Bar No. 444537
99 N.E. 4th Street- 7th Floor
Miami, Florida 33132
Telephone: (305)961-9176
Fax: (305)536-7599
AlisonLehr@usdoj.gov

-30-

VERIFICATION

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of

perjury, that I have read the foregoing Amended Complaint for Forfeiture In Rem and state that

the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed this _20_ day of November, 2009.

TARYN GUARIGLIA, Special Agent
INTERNAL REVENUE SERVICE